**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CRANE SECURITY TECHNOLOGIES, INC., and VISUAL PHYSICS, LLC, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:14-cv-12428-LTS |
| ROLLING OPTICS AB, | ) | **To Be Filed Under Seal, Subject to Protective Order** |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO ROLLING OPTICS AB'S OMNIBUS MOTION IN LIMINE (NOS. 3-17)**

Plaintiffs Crane Security Technologies, Inc. and Visual Physics, LLC (collectively "Crane") hereby oppose the Omnibus Motion in *Limine* (Nos. 3-17) filed by Rolling Optics AB ("RO").

## I. OPPOSITION TO RO'S MOTIONS IN LIMINE NOS. 3-5

In its Motions *in Limine* Nos. 3-5, RO seeks to prevent Crane from introducing evidence and argument: (1) relating to the currency market or the threat of harm to that market or the integrity of currency anticounterfeiting measures created by infringing security film; (2) that the purchase of the patents-in-suit was intended to secure currency, fight counterfeiting, or to limit application of the technology to banknotes; and (3) relating to the effect of a verdict, including without limitation the alleged harm to or protection of currency markets or the effect on either party.

All of this evidence is basic context for the case: what the patented invention is used for; why the patented invention is important; and why RO's infringement harms Crane and the public.

All of this evidence is also directly relevant to the calculation of damages. The jury will be asked to determine what reasonable royalty rate the parties would have agreed to for a license to the asserted patents. Under well-established law, Crane's position in that negotiation is inextricably linked to the market in which Crane operates, its customers, and the threat posed by licensing its patents to competitors. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970) (finding relevant to the determination of royalty rates "the anticipated amount of profits that the prospective licensor reasonably thinks he would lose as a result of licensing the patent as compared to the anticipated royalty income," "the market to be tapped," and "any other economic factor that normally prudent businessmen would . . . take into consideration"). The fact that the currency industry in which Crane operates highly values exclusivity of the technology, and that the primary use of the technology (*i.e.*, anti-counterfeiting) would have been undercut by licensing, would necessarily impact the royalty Crane was willing to accept in a negotiation. *See, e.g.*, *Telemac Corp. v. US/Intelicom, Inc.*, 185 F. Supp. 2d 1084, 1101-02 (N.D. Cal. 2001) (finding relevant to the reasonable royalty analysis the fact that patent owner would not have willingly licensed a competitor, or if "forced" to do so would only have licensed the competitor at the "highest possible royalty rate"). Crane's own purchase of the technology and reasoning for that purchase is also apt evidence of the value Crane placed on securing exclusivity of its use. And although the verdict itself might not be relevant to damages, the danger of RO's continuing infringement is. Without this information,

the jury would be unable to accurately imagine Crane's behavior in a hypothetical licensing negotiation, and thus unable to complete the damages analysis.

Without citing to a single legal authority, RO contends that this important evidence is irrelevant to any issue at trial because plaintiff Crane Security does not itself make or sell banknotes. This argument makes no sense. Crane Security's parent company, Crane Currency, makes US banknote paper incorporating the patented optical anti-counterfeiting feature made by plaintiff Crane Security, and supplies it to the U.S. Bureau of Engraving & Printing ("BEP"). The currency market in which Crane operates, and the anti-counterfeiting goals of Crane's customers in that market, are therefore directly relevant to Crane's business decisions about whether to license its intellectual property and the value of any such license to Crane. Moreover, while the commercial embodiment of a patented technology might not be relevant to an *infringement* analysis as RO states, it is certainly relevant to a damages analysis. *See Georgia-Pac.,* 318 F. Supp. at 1121.

## II. OPPOSITION TO RO'S MOTION IN LIMINE NO. 6

Through its motion to "exclude evidence and argument relating to the reputation or character of any entity other than the parties," RO again seeks to prevent Crane from providing necessary context and proper damages evidence. RO's motion should be denied for two reasons.

***First***, RO's underlying premise—that praise "for Crane Currency and its products could not be relevant" because Crane Currency is not a named plaintiff—is unsupported and nonsensical. It is undisputed that Crane Security Technologies, Inc. and Visual Physics, LLC ***are part of*** Crane Currency. Crane Security makes the patented optical anti-counterfeiting feature and supplies it to Crane Currency to be incorporated in banknotes and paper for banknotes. Praise for Crane Currency's products incorporating the patented feature is thus also

praise for Plaintiff Crane Security's products. RO is thus asking the Court and the parties to pretend that these facts do not exist.

***Second***, the fact that RO will not present any obviousness challenge at trial does not render the evidence RO contests irrelevant. To the contrary, industry praise is relevant to reasonable royalty damages under multiple *Georgia-Pacific* factors, including at least the "commercial success" and "popularity" of the patented technology (Factor 8) and the "character of the commercial embodiment" of the invention "as owned and produced by the [hypothetical] licensor" and "benefits to those who have used the invention" (Factor 10). *Georgia-Pac.*, 318 F. Supp. at 1120.

## III. OPPOSITION TO RO'S MOTION IN LIMINE NO. 7

RO's motion to exclude "evidence and argument relating to industry praise that is not specific to the claimed inventions of the asserted claims or to the accused products" rests on the same faulty premise as its Motion *in Limine* No. 6: that industry praise is relevant ***only*** to non-obviousness. That is not the case.

RO's request that the Court exclude "evidence that is not specific to the claimed invention or to the accused products or is otherwise inadmissible" is also unfounded. Praise for the ***commercial embodiment*** of the claimed invention is relevant, not merely praise for the patent claims themselves. *See, e.g.*, *Georgia-Pac.*, 318 F. Supp. at 1120 (the "character of the commercial embodiment" relevant under Factor 10).

## IV. OPPOSITION TO RO'S MOTION IN LIMINE NO. 9

RO's blanket attempt to exclude all reference to "***any*** . . . financial indicator regarding ***any*** party or non-party" (emphasis added) is vague and overbroad, and should be denied for this reason alone. *See, e.g.*, *Feezor v. Golden Bear Rest. Grp., Inc.*, No. 2:09-cv-03324-GEB, 2012 WL 2873353, at *1 (E.D. Cal. July 12, 2012) (denying vague motion *in limine*); *Payne v.*

*Schneider Nat. Carriers, Inc.*, No. CIV. 09-559-GPM, 2011 WL 1575422, at *1 (S.D. Ill. Apr. 26, 2011) (denying overbroad motion *in limine*). Concerns regarding any specific "financial indicator" can be addressed at trial. Certainly the profitability of the patented technology is relevant at least to damages. Courts routinely permit patentees to introduce financial information that is relevant to its damages analysis or other issues. *See, e.g.*, *TVIIM, LLC v. McAfee, Inc.*, No. 13-cv-04545-HSG, 2015 WL 4448022, at *2 (N.D. Cal. July 19, 2015); *PalTalk Holdings, Inc. v. Microsoft Corp.*, No. 2:06-CV-367 (DF), 2009 WL 10677719, at *2-*3 (E.D. Tex. Mar. 8, 2009).

RO's apparent attempt to invoke the "entire market value rule" is at best perplexing and inapposite in the context of this case, in which RO has not raised any question of apportionment of revenues attributable to the patented features versus unpatented features. *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). The opinions of Crane's damages expert also do not rely on any financial figures so large as to present a danger of "skew[ing] the damages horizon for the jury." *Id.* at 1320.

## V. OPPOSITION TO RO'S MOTION IN LIMINE NO. 10

The Court should deny RO's vague, overbroad motion to exclude "evidence and argument relating to the Court's prior rulings or the parties' motions." RO's motion would, among other things, prevent Crane from (1) referring to the fact that the Court has construed certain claim terms (and referring to the claim constructions themselves), or (2) referring to the fact that the Court has already determined on summary judgement that RO's products infringe. Trying the case would be impossible without being able to tell the jury these things. For example, asking the jury to find willful infringement or award damages would be impossible without telling the jury that a predicate for such findings—infringement—has already been

determined. Likewise, addressing alleged anticipation of the claims by the prior art cannot be done without referring to how the Court has construed the claims.

To be clear, Crane does not intend to present its own prior briefing as evidence, or to mischaracterize the Court's prior rulings. If RO believes that Crane does so at trial, RO can object.

## VI. OPPOSITION TO RO'S MOTION IN LIMINE NO 11

Far from a "discovery dispute," as RO erroneously characterizes it, Crane seeks to introduce evidence that RO destroyed and failed to preserve documents relevant to the litigation. As the First Circuit has regularly held, "a trier of fact may (but need not) infer from a party's obliteration of a document relevant to a litigated issue that the contents of the document were unfavorable to that party." *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998).[1] The party seeking such an inference must lay "a suitable foundation" for the inference, which requires proffering "evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim." *Id.*

That is precisely the evidence that Crane seeks to introduce. ***First***, RO destroyed and failed to preserve emails relevant to the case. Crane obtained copies of some of these emails via third-party subpoena, some of which showed that RO continued to sell its infringing products *after it received notice of Crane's claims*, which goes to the heart of the willfulness and damages issues. In fact, [redacted] *See* Ex.

---

1 RO apparently recognizes this principle, as it once requested "[t]hat the jury be instructed that Mr. Steenblik's laboratory notebook was improperly withheld from Rolling Optics during discovery." ECF No. 384 at 2.

01, Lundvall Dep. at 192:20-195:6.[2] RO's concealment of evidence of infringement is itself relevant to willfulness. *Cf. Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 63 (1st Cir. 2008) (dicta).

***Second***, after RO knew of the potential for litigation related to Crane's patents, [redacted] *See* Ex. 01, Lundvall Dep. at 194:18-195:6. Crane's expert, Dr. Christopher Vellturo, will testify that his determination of damages was hindered by, and is likely low because of, [redacted] *See* Ex. 02, Vellturo Rpt. ¶ 138.

Indeed, two of the cases RO cites in support of its motion actually support the admission of the evidence RO seeks to exclude. In *Waters*, directly after the admonition cited in RO's motion, the court *allowed* the plaintiff to offer evidence that a letter had been written and that the defendant denied the existence of such a letter. *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 814, 820 (E.D. Pa. 2005). The *Waters* court determined that "[t]he jury may draw whatever reasonable inference or inferences that flow from these facts." *Id.* Similarly, in *Long*, the court limited discussion of discovery disputes, but specifically allowed "cross-examination of any witness on prior denials of the existence of" the report forming the basis of one such discovery dispute to the extent those denials went to the witness's credibility. *See Long v. Fairbank Farms Reconstruction Corp.*, No. 1:09-cv-592, 2011 WL 5386599, *1 (D. Me. Oct. 25, 2011). Both cases thus support the introduction of evidence that RO seeks to preclude.[3]

---

[2] All exhibits referenced herein are attached to the declaration of Myles McDonagh filed concurrently in support of this opposition.

[3] The third case cited in RO's motion involved vastly different facts from those at issue in this case, rendering that court's balance between relevance and prejudice inapplicable. In *Briggs*, the court determined that exclusion was warranted where defendant failed to timely produce only two relevant documents in a production of hundreds of thousands, such that "plaintiff's evidence of misconduct is tenuous."

## VII. OPPOSITION TO RO'S MOTION IN LIMINE NO. 12

RO itself acknowledges that translation accuracy goes to weight, not admissibility. *See* ECF. No. 421 at 8 ("The question of which translation is most accurate is a credibility determination, ***and thus a question for the jury***." (emphasis added)). RO's motion to "exclude evidence and argument relating to exhibits in a language other than English for which the accuracy of the translation is in dispute" should therefore be denied based on RO's own motion. Crane should be permitted to present evidence—including its certified translations—and argument relating to translated documents, even where the accuracy of the translation is disputed. *See, e.g.*, *Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 435 F. App'x 927, 932 (Fed. Cir. 2011) ("The fact-finder's selection of a particular translation as the best translation of a foreign language reference raises pure questions of fact.") (unpublished); *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1142-43 (Fed. Cir. 1986).

## VIII. OPPOSITION TO RO'S MOTION IN LIMINE NO. 13

The jury should be informed of the applicable law. The Patent Act expressly provides that a "patent shall be presumed valid." 35 U.S.C. § 282; *see Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 100 (2011) ("[B]y its express terms, § 282 establishes a presumption of patent validity, and it provides that a challenger must overcome that presumption to prevail on an invalidity defense"). That presumption gives rise to RO's burden of proving invalidity by "clear and convincing" evidence. *See Volterra Semiconductor Corp. v. Primarion, Inc.*, No. C-08-

---

*Briggs & Stratton Corp. v. Kohler Co.*, No. 05-C-0025-C, 2005 WL 3447979, at *2, *6 (W.D. Wis. Dec. 15, 2005). Crane, on the other hand, seeks to introduce evidence that RO consistently failed to preserve its emails and sales records, such that whole swaths of relevant documents were unavailable to Crane, not just two documents.

05129 JCS, 2011 WL 4079223, at *10 (N.D. Cal. Sept. 12, 2011) (clear and convincing standard applies because a patent is entitled to statutory presumption of validity).

Thus, acknowledging the presumption of validity will help the jury to understand *why* RO has a heightened burden on invalidity. This, in turn, may remove "a potential stumbling point for the jury—an unequal burden of proof." *Fleming v. Escort, Inc.*, No. 1:CV 09-105-BLW, 2012 WL 1995069, at *5 (D. Idaho June 4, 2012) (denying motion *in limine* to preclude patentee from mentioning presumption of validity); *see Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-CV-346-BBC, 2014 WL 4955302, at *1 (W.D. Wis. Oct. 1, 2014) (same). Crane should therefore be permitted to provide context for RO's burden regarding invalidity, and RO's motion "to exclude evidence and argument suggesting a presumption of validity for any patent" should be denied.

## IX. OPPOSITION TO RO'S MOTION IN LIMINE NO. 14

The Court has already ruled that the issue of notice is a question of fact for trial. ECF No. 357 at 30, 33. Yet RO now improperly attempts to raise this substantive issue again a motion *in limine*. *See, e.g.*, *Nat. Res. Def. Council v. Rodgers*, No. CIV-S-88-1658 LKK, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) ("Motions *in limine* address evidentiary questions and are inappropriate devices for resolving substantive issues."). RO's request to exclude evidence suggesting that the April 26, 2010, letter from Crane to RO provided notice of any patent-in-suit other than the '842 patent is thus an improper request for a substantive ruling on the factual notice issue.

In any case, despite RO's assertion, the April 26, 2010, letter *did* provide actual notice of the '842 patent family, not just the '842 patent. Whether this notice complies with 35 U.S.C. § 287(a), as Crane contends that it does, is a question of fact for the jury. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

Further, whether or not the April 26, 2010, letter gave notice of the other patents is not dispositive of any issue for trial, and precluding discussion of it would therefore not streamline the presentation of any issues. All of RO's products made before 2013 were found to infringe the '842 patent. ECF No. 357 at 19-20. And RO concedes that it received notice of the other patents in 2012, well before it started production of its new technology in 2013. ECF No. 101 at 11.

## X. OPPOSITION TO RO'S MOTION IN LIMINE NO. 15

Crane agrees that the parties may not—and Crane will not—present evidence or argument inconsistent with the Court's claim constructions at trial. *See, e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's construction to a jury.").

To the extent, however, that RO's motion seeks (again) to relitigate the Court's claim construction for "shaped posts," RO's motion should be denied. RO apparently intends (again) to make the hypothetical argument that printing on a non-porous substrate will necessarily produce a "shaped post" as construed by the Court. RO advanced this exact same argument in its Motion for Clarification or Reconsideration of the Court's Claim Construction of "shaped posts." *See* ECF No. 361 at 7. The Court denied this motion and RO's request for clarification or reconsideration. *See* ECF No. 364. RO is thus ignoring the Court's Orders by trying to reargue the matter yet again, this time through an inappropriate one-paragraph motion *in limine*. *See, e.g.*, *Nat. Res. Def. Council v. Rodgers*, No. CIV-S-88-1658 LKK, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) ("Motions *in limine* address evidentiary questions and are inappropriate devices for resolving substantive issues."). Hypothetical, speculative arguments about claim construction are inappropriate advisory opinions in any event. *See Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (refusing to decide claim construction arguments "that do

not actually affect the infringement controversy between the parties" to avoid an impermissible advisory opinion); *see also SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353-54 (Fed. Cir. 2012) (similar).

## XI. OPPOSITION TO RO'S MOTION IN LIMINE NO. 16

All of RO's products (old and new technology) imported or sold into the United States have already been adjudged by the Court to infringe (and are no longer merely "accused" but actual infringements). It is therefore unclear what RO is referring to when it refers to "foils or products that have not been accused," and RO does not identify any such product or foil. *All* of RO's products were accused of infringement. ECF No. 63 at 2.

If RO is referring to a plan to compete with Crane in the currency market, with products not yet introduced or accused, such competition is relevant to Crane's claim for damages in multiple ways. ***First***, it is generally recognized that a patent owner would require a higher royalty rate to license a direct competitor. *Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 165 (D. Mass. 2000), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001). ***Second***, Crane's policy against licensing its product to competitors also weighs in favor of a higher royalty rate. *Id.* ***Third***, to the extent RO's entrance into the currency market could impede Crane's customer relationships or make its technology less valuable to its current customers, that fact would weigh in favor of a higher royalty rate. *See Georgia-Pac.,* 318 F. Supp. at 1121 (finding relevant to the determination of royalty rates "any other economic factor that normally prudent businessmen would . . . take into consideration"). RO does not actually dispute this, and instead contends only that (unspecified) products that have not been accused are not probative of ***infringement***.

Where the evidence is relevant to an issue for trial, it is admissible unless another law or rule provides otherwise. Fed. R. Evid. 402. In support of its motion, RO does not argue that evidence should be excluded because it is irrelevant, but only that its probative value is

outweighed by its potential for prejudice. But RO does not say why anything would be unfairly prejudicial or even identify what that thing is. RO instead vaguely states that a jury "may draw" some unspecified inferences from its offer of unspecified other products. Such conclusory assertions of prejudice do not justify exclusion of relevant evidence.

## XII. OPPOSITION TO RO'S MOTION IN LIMINE NO. 17

As RO acknowledges (ECF No. 421 at 12), and consistent with *Knorr-Bremse*, Crane will not suggest a negative inference—or invite the jury to draw such an inference—based on RO's claim of privilege. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc).

But RO's motion to exclude is broader than this and should be denied. ***First***, although the Court ruled that RO "disavow[ed] relying upon . . . an advice of counsel defense in its substantive litigation positions" (ECF No. 69 at 2), RO is again disregarding the Court's Orders. RO asserts in the parties' Joint Pretrial Memorandum that RO "investigated the scope of the [asserted] patents and formed a good-faith belief that they were invalid or that it was not infringing" (ECF No. 418 at 4), suggesting that RO may improperly rely on such advice at trial. In the event RO improperly elicits testimony that it "formed a good-faith belief that [the asserted patents] were invalid or that it was not infringing," based on advice of counsel, RO cannot then use the attorney-client privilege as a shield against further questioning on that previously-unproduced advice. RO's motion fails to mention, let alone address, this issue.

***Second***, [redacted] (*E.g.*, Ex. 03, Anderson Dep. at 88:2-6.) *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 810 (Fed. Cir. 2007) ("Whether an infringer ignored the opinion of its counsel is" relevant to the "willfulness inquiry."); *Read Corp.*

*v. Portec, Inc.*, 970 F.2d 816, 828-29 (Fed. Cir. 1992) ("Those cases where willful infringement is found despite the presence of an opinion of counsel generally involve situations where opinion of counsel was either ignored or found to be incompetent.").

For the foregoing reasons, Crane respectfully requests that the Court enter an order denying RO's Motions *in Limine* No. 3-17.

Respectfully submitted,

CRANE SECURITY TECHNOLOGIES, INC., and
VISUAL PHYSICS, LLC

By their attorneys,

/s/ *Wayne L. Stoner*
Wayne L. Stoner (BBO No. 548015)
Vinita Ferrera (BBO No. 631190)
Jason H. Liss (BBO No. 672902)
Michaela P. Sewall (BBO No. 683182)
Nicole Fontaine Dooley (BBO No. 690539)
Myles McDonagh (BBO No. 697513)

WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
wayne.stoner@wilmerhale.com
vinita.ferrera@wilmerhale.com
jason.liss@wilmerhale.com
michaela.sewall@wilmerhale.com
nicole.fontainedooley@wilmerhale.com
myles.mcdonagh@wilmerhale.com

Mary R. Bonzagni (BBO# 553771)
BULKLEY, RICHARDSON AND GELINAS, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115
Telephone: (413) 272-6286
mbonzagni@bulkley.com

Dated: April 24, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 24, 2018.

*/s/ Nicole Fontaine Dooley*
Nicole Fontaine Dooley
(BBO No. 690539)